**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| DAVID M. LOGAN, an individual, | : | **MEMORANDUM DECISION** |
| | : | **AND ORDER GRANTING** |
| Plaintiff, | : | **MOTION TO DISMISS** |
| | : | |
| v. | : | |
| | : | Case No. 2:12-cv-00191-DN |
| BANK OF AMERICA, N.A., as successor by | : | |
| merger to BAC HOME LOANS | : | |
| SERVICING, LP, a Texas Limited | : | |
| Partnership; WILSHIRE CREDIT | : | Judge David Nuffer |
| CORPORATION; and JOHN DOES 1-5, | : | |
| | : | |
| Defendants. | : | |

Plaintiff David M. Logan (Logan) filed a complaint against Wilmington Finance, Inc.

(Wilmington), BAC Home Loans Servicing, L.P. (BAC) and John Does 1-5 on February 16,

2012.[1]  Wilmington was voluntarily dismissed from the case on March 20, 2012.  On March 21,

2012, Logan filed an amended complaint by stipulation against Bank of America, N.A., as

successor by merger to BAC (BANA), Wilshire Credit Corporation (Wilshire, collectively,

defendants), and John Does 2-5.[2]  Defendants filed their motion to dismiss on or about April 11,

2012.[3]  Logan filed his memorandum in opposition to defendants' motion to dismiss on or about

May 15, 2012.[4]  Defendants filed their reply in support of the motion to dismiss on or about May

---

[1] Complaint, docket no. 2, filed Feb. 16, 2012.

[2] Amended Complaint, docket no. 10, filed Mar. 21, 2012.

[3] Defendant's Motion to Dismiss or, in the Alternative, to Drop Defendant Bank of America (Motion to Dismiss) docket no. 13, filed Apr. 11, 2012.

[4] Memorandum in Opposition to Defendants' Motion to Dismiss (Opposition), docket no. 24, filed May 15, 2012.

31, 2012.[5]  The Court considered these written memoranda of the parties and makes its determination solely on the basis of those written memoranda pursuant to DUCivR 7-1(f).

The Court has carefully reviewed and considered the written submissions of the parties and grants defendants' motion to dismiss all claims in this case with prejudice, for the reasons set forth below.

## I.      SUMMARY OF CLAIMS

Logan asserts three causes of action - negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing.  Each is premised on the notion that defendants had a duty to disclose and either failed to disclose or made misleading statements regarding the six-month LIBOR interest rate at the time of the loan closing on August 31, 2006, and what impact that rate would have on the overall interest rate that Logan would have to pay on his home loan.[6]

The promissory note, the trust deed, and interest rate disclosure did not state that Logan's initial interest rate would adjust up only if LIBOR went up, which Logan alleged was his understanding at closing.[7]  Instead, these loan documents set forth a specific formula for calculating the interest rate.  Logan's allegations of the purportedly misleading statements regarding the interest rate do not provide the name of the individual(s) who made these statements, nor what was specifically said to him, nor when or how such alleged statements were made.[8]

---

[5] Reply Memorandum in Support of Defendants' Motion to Dismiss (Reply) docket no. 15, filed May 31, 2012.

[6] Amended Complaint, ¶¶ 11-17, 19-20, 36-42, 44-48, 50-52, 55-58, 71-72.

[7] *Id.* ¶¶ 37, 39.

[8] *Id.* ¶¶ 35-36, 37-41, 45-48, 55-58.

## II.   BACKGROUND FACTS

The following facts are taken from the amended complaint or papers referenced in the amended complaint.  On August 31, 2006, Logan obtained a $410,500 loan from Wilmington to refinance the purchase of certain real property located at 4675 Pheasant Ridge Trail in Lehi, Utah. (Property).[9]  The loan was memorialized by a promissory note (note) and secured by a Deed of Trust (trust deed) naming Mortgage Electronic Registration System, Inc. (MERS) as the beneficiary, and Paramount Title Company (Paramount) was named the trustee under the trust deed.[10]

The note and the fixed/adjustable rate rider to the trust deed explained that, beginning on October 1, 2008, the interest rate would change, and it would change again every sixth months thereafter.  These papers further provided that, after October 1, 2008, the rate would be calculated by adding 5.99% to the six-month LIBOR index published in the *Wall Street Journal*. A document Logan received and signed at closing entitled "Variable Rate Mortgage Program Disclosure," explained, among other things that "[f]or example, on a $10,000 loan for 30 years with an initial interest rate of 7.65% . . . . [t]he maximum amount that the rate can increase under this program is 6.00% [from 7.65%] to 13.65%."[11]  Similarly, under paragraph 4(D) of the note and the fixed/adjustable rate rider to the trust deed, entitled "Limits on Interest Rate Changes," it states "[t]he interest rate I am required to pay [on October 1, 2008] will not be greater than 9.990% . . . . My interest rate will never be greater than 13.990%, or less than 7.990%."[12]  At closing Logan also received and signed a Notice of Right to Cancel (notice of right to cancel)

---

[9] *Id.* ¶ 5.

[10] *Id.* ¶ 6.

[11] Variable Rate Mortgage Disclosure at 2, docket no. 16-3, attached as Exhibit 3 to Memorandum in Support of Defendants' Motion to Dismiss (Memo in Support), filed Apr. 11, 2012.

[12] Adjustable Rate Note at 3 ¶ 4(D), docket no. 16-1, , attached as Exhibit 1 to Memo in Support;  Deed of Trust at 14 ¶  4(D), docket no. 16-2, attached as Exhibit 2 to Memo in Support.

under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (TILA).  Logan does not deny he was

in default under the loan by June 6, 2011 and admits he was late on two consecutive monthly

payments in 2010.[13]

### III.    RULING

#### A.    **Standard of Review**.

Defendants move this Court to dismiss Logan's action pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Defendants are entitled to dismissal under Rule\12(b)(6) when

the  complaint, standing alone, is legally insufficient to state a claim for which relief may be

granted.[14]  When considering a motion to dismiss for failure to state a claim, the Court presumes

the thrust of all well-pleaded facts in the complaint, but need not consider conclusory

allegations.[15]  Nor is the Court bound to accept the complaint's legal conclusions and opinions,

whether or not they are couched as facts.[16]  "In evaluating a Rule 12(b)(6)  motion to dismiss,

courts may consider not only the complaint itself, but also attached exhibits, and documents

incorporated into the complaint by reference."[17]

The United States Supreme Court has held that satisfying the basic pleading requirements

of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me

accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'"[18] "[T]he tenet that a court must accept as true all of

---

[13] Amended Complaint, ¶¶ 29-33

[14] *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[15] *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[16] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[17] *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* , 550 U.S. at 555).

the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[19] "[N]aked assertions devoid of further factual enhancement,"[20] does not state a claim sufficiently to survive a motion to dismiss.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[21]  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[22]  That is, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[23] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[24]

The Court, after applying this legal standard to Logan's amended complaint, concludes that it fails to state a claim for the reasons stated below.

---

[19] *Id.*

[20] *Id.*

[21] *Id.*at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[22] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[23] *Robbins v. Oklahoma* 519 F.3d 1242, 1247-48 (10th Cir. 2008).

[24] *Id.* at 1248.

**B.      The Statute of Limitations Bars the First Cause of Action Because
Reasonable Diligence Would have Revealed the Information Logan Claims
was Concealed.**

Logan's key allegation that he had no way of knowing that his mortgage interest rate
would increase even if LIBOR decreased are belied by the loan documents themselves.  Even
assuming Logan did not know what his interest rate would be once it was pegged to LIBOR +
5.99%, he could have readily determined it.  As disclosed in the loan documents Logan received
at closing, LIBOR is published in the *Wall Street Journal*.  During the three business day period
Logan had to rescind the loan under TILA, he could have looked up the information to determine
the current LIBOR and he could have made the necessary calculation to determine what his
interest rate would be if it were pegged to LIBOR + 5.99% that day.  His failure to investigate
until his interest rate changed does not alter this analysis.

"A plaintiff is deemed to have discovered his [cause of] action when he has actual
knowledge of the fraud, 'or by reasonable diligence and inquiry should know the relevant facts
of the fraud perpetrated against him.'"[25]  "This means that if a party has the opportunity to know
the facts constituting an alleged fraud, that party cannot remain inactive and then later allege a
want of knowledge as a result of his own negligence."[26]

"Generally, one party to an agreement does not have a duty to ensure that the other party
has a complete and accurate understanding of all terms embodied in a written contract."[27]
"Rather, each party has the burden to read and understand the terms of a contract before he or
she affixes his or her signature to it.  A party may not sign a contract and thereafter assert

---

[25] *Colosimo v. Roman Catholic Bishop,* 2007 UT 25, ¶ 17, 156 P.3d 806 (quoting *Baldwin v. Burton,* 850 P.2d 1188, 1196 (Utah 1993)).

[26] *Booth v. Attorneys' Title Guar. Fund, Inc.,* 2001 UT 13, ¶ 43, 20 P.3d 319.

[27] *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207-1208 (Utah 1987).

ignorance or failure to read the contract as a defense."[28]  "'[A] person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it[.]'"[29]

In *Thorton v. Countrywide Mortgage Ventures, LLC*[30] the plaintiff asserted "that the statute of limitations should be tolled because he could not have discovered the negligent misrepresentations until he had a forensic loan audit performed."[31]  The court disagreed, finding that the plaintiff "could have been aware of the alleged misrepresentations through reasonable diligence at the time he obtained the first loan" because he "should have read terms of the promissory note and trust deed before signing them and made sure that he understood the terms contained in those agreements."[32]  "Even unsophisticated borrowers are charged with reading a document and understanding its terms before signing it."[33]  Therefore, "there [was] no basis for applying the discovery rule to toll the statute of limitations."[34]

Logan's failure to exercise reasonable diligence which would have uncovered the allegedly concealed information means that even if the discovery rule is applied, the statute of limitations on his claims began, at the latest, three business days after the loan closed on August

---

[28] *Id.* at 1208.

[29] *Id.* (quoting *Garff Realty Co. v. Better Bldgs., Inc.*, 120 Utah 34, 234 P.2d 842, 844 (1951)).  *See also Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1191 (Utah Ct. App. 1991) ("It was up to Ross at that point to exercise ordinary diligence in examining the agreement prior to . . . acceptance. . . . Thus, . . . if there was any mistake on the part of Ross, it was entirely due to his own negligence in not discovering and correcting what he regarded to be an error in the parties' agreement.").

[30] 2:11-cv-467, 2011 WL 4964275 (D. Utah Oct. 19, 2011).

[31] *Thorton,* 2011 WL 4964275, at *3.

[32] *Id.*

[33] *Id.*; *accord John Call Engineering*, 743 P.2d at 1207-08.

[34] *Thornton*, 2011 WL 4964275, at *3.

31, 2006.[35]  Yet the complaint raising this claim was not filed until February 17, 2012. Accordingly, the complaint is time-barred by the three year statute of limitations.[36]

### C.      Logan's Negligent Misrepresentation Claim is Inadequately Pled.

An effective claim for negligent misrepresentation requires (1) a false representation was made carelessly or negligently, (2) with the expectation that the other party to rely and act thereon, (3) the other party reasonably relies upon these misrepresentations, and (4) suffers loss in that transaction.[37]

Under Utah law, negligent misrepresentation constitutes a form of fraud,[38] therefore, the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure applies to negligent misrepresentation claims.[39]  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[40]

Logan claims that he believed, "based upon the disclosures made to him regarding the loan, that the adjustable rate would correspond with the adjustments in the market."[41]  He also claims that "Wilmington lead [him] to believe that his rate would only adjust upwards if the LIBOR index adjusted upwards by a corresponding amount."[42]  However, under Utah law, "a

---

[35] *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (quoting *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981)).

[36] *See Russell Packard Dev.*, 2005 UT 14, ¶ 23; *Aktinson v. IHC Hosps., Inc*., 798 P.2d 733 (Utah 1990); Utah Code Ann. § 78B-2-305(3).

[37] *See Smith v. Frandsen*, 2004 UT 55, ¶ 10, 94 P.3d 919.

[38] *See Coroles v. Sabey*, 2003 UT App 339, ¶¶ 35-41, 79 P.3d 974

[39] *See Hoverman v. CitiMortgage*, 2:11–cv–118, 2011 WL 3421406, at *5 (D. Utah Aug. 4, 2011).

[40] *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotation marks omitted).

[41] Complaint, ¶ 37.

[42] *Id.* ¶ 39.

party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information."[43]  The loan documents plainly disclosed the initial interest rate as well as all the information necessary to determine LIBOR + 5.99%.  Thus, Logan cannot show reasonable reliance based on vague claims about being led to believe something different than the terms disclosed in the note or the trust deed, especially when he alleges a failure to make a statement rather than a specific misstatement made, as required by Rule 9.

   D.   **The Express Terms of the Note and Trust Deed Defeat Logan's Causes of Action for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

   Logan alleges that his failure to pay his monthly mortgage payment obligation is excused by Wilshire's alleged refusal of three months' worth of payments.  He says this refusal is a breach of contract and a breach of the implied covenant of good faith and fair dealing.  But that refusal occurred *after* his default.[44]  By signing the note, Logan promised to "make [his] monthly payments on the first day of each month beginning on November 1, 2006 . . . until [he] ha[d] paid all of the principal and interest any other charges . . . that [he] may owe under this Note."[45]  Similarly, Logan covenanted and agreed that he "shall pay when due the principal of, and interest on, the debt evidenced the Note and any . . . late charges due under the Note."[46]  Similarly, under the trust deed, "if [Logan] fails to perform the covenants and agreements contained in this [deed of trust], then [defendants] may do and pay for whatever is reasonable or

---

[43] *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1068 (Utah 1996).  *See also Rubey v. Wood*, 13 Utah 2d 285, 373 P.2d 386, 387-88 (1962); *Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 577-78 (Utah Ct. App. 1994); *Brown v. Weis*, 871 P.2d 552, 562-63 (Utah Ct. App. 1994).

[44] *Compare* Amended Complaint ¶ 29 *with* Amended Complaint ¶ 30.

[45] Adjustable Rate Note at 1.

[46] Deed of Trust at 4.

9

appropriate to protect [defendants'] interest in the Property and rights under this [deed of trust]"[47] but need not undertake any specific acts to protect this interest.

Defendants did not interfere with or prevent Logan from performing his obligations under the note and trust deed when he admittedly missed two monthly payment obligations.[48] Therefore, Logan's breach cannot be excused and as the first to breach he is thereby barred from asserting a claim for breach of contract.[49]

Since Logan cannot assert a breach of contract claim, he is also barred from asserting a claim for the breach of the implied covenant of good faith and fair dealing.[50] Thus, Logan's contract-based causes of action also fail to state a claim and cannot be saved by amendment.

---

[47] *Id.* at 7 ¶ 9.

[48] Complaint, ¶¶ 29-33, 47, 60.

[49] *See CCD v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366 ("under the 'first breach' rule 'a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform.'" The first to breach "'can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform.'" (quoting *Jackson v. Rich*, 499 P.2d 279, 280 (Utah 1972)); *Fisher v. Taylor*, 572 P.2d 393, 395 (Utah 1977) (first party to materially breach a contract "cannot be heard to complain of a subsequent breach").

[50] *See, e.g., Peterson & Simpson v. IHC Servs., Inc.*, 2009 UT 54, ¶ 21, 217 P.3d 716 ("The duties of a good faith and fair deal arise out of the relationship between the parties created by the contract and have no independent existence outside of the contract[.]"); *Craner v. Nw. Mutual Life*, 12 F. Supp. 2d 1234, 1242 (D. Utah 1998) ("Where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom."); *Strupat v. Aurora Loan Servs., LLC*, No. 2:11-cv-279, 2011 WL 2359842, at *4 (D. Utah Jun. 9, 2011) ("Absent a contract, there can be no breach of any implied duty."). *See also Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 505 (Utah 1980) ("A duty of good faith does not mean that a party vested with a clear right is obligated to exercise that right to its own detriment for the purpose of benefiting another party to the contract. A court will not enforce asserted rights that are not supported by the contract itself.").

## IV.    ORDER OF DISMISSAL

IT IS HEREBY ORDERED that defendants' motion to dismiss[51] is GRANTED and the

amended complaint is DISMISSED WITH PREJUDICE.  The Clerk is directed to close this

case.

Dated this 20th day of November, 2012.

**BY THE COURT**

_____

David Nuffer
United States District Judge

---

[51] Docket no. 13.